IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,                )
                                         )
                    vs.                  )
                                         )     CRIMINAL NO. 2:11-185-2
KURT MAXSHURE,                           )
                                         )
                    Defendant.           )
                                         )
                                         )

AMBROSE, United States Senior District Judge

## MEMORANDUM ORDER OF COURT

### I. Introduction

Defendant has filed a counseled Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as Amended by the First Step Act of 2018. [ECF No. 896]. He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). He states that he fears that his medical conditions (hypertension) render him particularly susceptible to complications from the COVID-19 virus if he were to contract it in prison (FCI McDowell). Id. The Government has filed a Response in Opposition [ECF No. 901]. After careful consideration of the submissions, and for the reasons set forth below, Defendant's Motion is denied.

### II. Background

On July 16, 2011, Defendant was indicted along with his codefendants. [ECF No. 1]. On September 3, 2013, Defendant plead guilty to Count 1 of the Superseding Indictment: conspiracy to distribute five grams or more of cocaine in violation of 21 U.S.C. § 846. [ECF No. 594]. On December 6, 2013, Judge Cohill of this Court sentenced Defendant to 235 months incarceration, with five years supervised release to follow. [ECF No. 665]. On August 26, 2016, Defendant's sentence was reduced to 188 months pursuant to 21 U.S.C § 3582(c)(2). [ECF No. 849].

Defendant has been detained since July 16, 2011, and currently is incarcerated at FCI McDowell with a projected release date of November 19, 2024. [ECF No. 59].  He is 51 years old.

**III. Analysis**

A district court has only limited authority to modify a sentence. Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." United States v. Somerville, 463 F. Supp. 3d 585, 590 at * 2 (W.D. Pa. May 29, 2020) (citing 18 U.S.C. § 3582(c)(1)); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i)      extraordinary and compelling reasons warrant such a reduction….
>>>>
>>>> And that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

2

18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted his administrative remedies.[1] Consequently, I turn to a consideration of whether the Defendant has established "extraordinary and compelling reasons" in support of compassionate release."

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D). The defendant bears the burden of proving that extraordinary and compelling reasons exist. See United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

The Application Notes to the policy statement recognize that "extraordinary and compelling reasons" may exist based on the defendant's medical condition. That is, extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, which substantially diminishes his ability to provide self-care within the correctional facility and from which he is not expected to recover. U.S.S.G. 1B1.13, Cmt., App. Note 1(A)(ii). If Defendant's condition does not meet this standard, I also may assess whether extraordinary and compelling reasons for compassionate release exist other than, or in combination with, this defined ground. U.S.S.G. 1B1.13, Cmt., App. Note 1(D). Smith, 2020 WL 4047485, at **2-3.[2]

---

[1] The Government notes that BOP records show that Defendant submitted a request to the Bureau of Prisons ("BOP") on August 11, 2020, and that the Warden denied that request on August 12, 2020. [ECF No. 901-1]. Because, as the Government acknowledges, more than 30 days have lapsed since the date of receipt of the request by the warden, the Motion is ripe.

[2] As set forth above, the Application Notes to § 1B1.13 of the Guidelines also state that "other reasons" might warrant compassionate release. U.S.S.G. § 1B1.13, cmt. note 1(D). Because this Guideline provision has not been updated since the enactment of the First Step Act, there is a dispute as to whether a court may define what fits into the "other reasons" category, or if such determination is left to the BOP. See United

When evaluating "extraordinary and compelling" reasons, the Defendant bears the burden of showing: "(1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." United States v. Somerville, 463 F.Supp.3d, 585, 597  (W.D. Pa.  2020).

Here, Defendant contends that his pre-existing hypertension and anemia, coupled with the ongoing Covid-19 pandemic and his race, constitute extraordinary and compelling circumstances in this case. [ECF No. 896]. In the body of his motion, he states that his hypertension puts him at an increased risk of severe illness if he contracts Covid-19. He also states that, as a black man, he is fearful of contracting a virus that disproportionately affects the black community See id. at 3. Neither Defendant nor the Government supplied any medical records with the motion or response thereto.[3]

Defendant asserts that the Centers for Disease Control ("CDC") classifies individuals with hypertension as "more likely to get severely ill from Covid-19" and require hospitalization, intensive care, a ventilator, and be at risk of death. [ECF No. 896, at 3]. More accurately, the CDC currently states that "Having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). Although I certainly am sympathetic to Defendant's alleged hypertension and anemia diagnoses, and do not dismiss the CDC's findings that hypertension is a possible risk factor, I find that the record fails to

States v. Hammond, Criminal No. 18-184, 2020 WL 2126783, at *4 n.5 (W.D. Pa. May 5, 2020). Consistent with the majority of courts that have considered this issue, I have found that the "catch-all" provision under (D) permits courts to independently assess whether "extraordinary and compelling reasons" exist, and I have conducted such an assessment in this case. See Smith, 2020 WL 4047485, at *3.

[3] The Government represents that it requested the medical records from the BOP, but that the paperwork the BOP provided did not contain those records. The Government still had not received the records at the time it filed its response. [ECF No. 901, at 4 n.1].

demonstrate that Defendant's condition is serious enough in nature in and of itself to warrant release. As set forth above, Defendant has not provided any medical records. Moreover, although he reports being prescribed PCP Hydrochlorothiazide (25 mg) prior to incarceration for his hypertension, he does not allege any hypertension-specific incidents requiring medical care during his incarceration. Defendant does not contend he is currently suffering from Covid-19 symptoms or experiencing serious symptoms related to his hypertension or anemia, and there is no indication that he currently lacks access to medication or to appropriate care for his conditions in prison. The mere chance that Defendant may contract the virus and be more susceptible to complications if he does so is not enough on its own to demonstrate extraordinary and compelling circumstances supporting release in this case. See, e.g., United States v. Fry, 2020 WL 1923218 (D. Minn. Apr. 21, 2020) (stating that, to merit compassionate release, Defendant must show more than mere fear or speculation concerning the possibility of contracting the virus); United States v. MacKenzie, 458 F. Supp. 3d 53, 55 (D. Mass. May 1, 2020) (same).[4]

In evaluating Defendant's medical conditions, I also have considered the impact of the Covid-19 pandemic at FCI-McDowell. Overall, the BOP has a detailed plan implementing modified operations across its facilities in order to mitigate the spread of Covid-19, limiting inmate movement, screening staff and inmates, and modifying operations to maximize social distancing. See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 9, 2021). Although some federal prisons have nevertheless seen significant cases of Covid-19 within their facilities, as of June 9, 2021, FCI-McDowell currently has zero reported cases among 1,368 total inmates and 4 cases involving staff members. The facility has zero inmate or staff deaths attributed to

---

[4] In addition, the Government represents that the BOP informed them that Defendant contracted and fully recovered from Covid-19 while incarcerated. [ECF No. 901, at 4]. Because neither side has submitted medical records confirming this diagnosis and Defendant does not mention it directly in his Brief, I have not based my ruling on this information. If true, however, this is an additional reason counseling against compassionate release in this case. See, e.g., United States v. Moore, Criminal Action Number 18-474, 2021 WL 308331, at *2 (E.D. Pa. Jan. 29, 2021) (citing cases).

Covid-19. See https://www.bop.gov/coronavirus/ (last visited June 9, 2021). Accordingly, there is no evidence that Defendant faces an extraordinary risk of exposure to the Covid-19 virus at his place of incarceration. Although I recognize the potential for Defendant's exposure to the Covid-19 virus at FCI-McDowell, that potential unfortunately exists anywhere in the community. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (cautioning that "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); see also United States v. Taylor, No. CR 03-238, 2021 WL 767613, at *2 (W.D. Pa. Feb. 26, 2021) (agreeing with courts "that have found that merely being confined at an institution that has experienced the virus does not itself warrant release").

As to Defendant's fear that his race exacerbates his risk of severe illness, I agree with other courts in this District addressing this issue that his race alone does not help him establish an extraordinary and compelling reason for release. See, e.g., United States v. Johnson, No. CR 2:08-374, 2021 WL 409830, at *8 (W.D. Pa. Feb. 5, 2021), aff'd, No. 21-1318, 2021 WL 1997678 (3d Cir. May 19, 2021); Taylor, 2021 WL 767613, at *2, n.1. It is not clear that race is an independent factor that increases Defendant's risk of complications from Covid-19 in the same manner as one's underlying medical conditions. See United States v. Bell, No. 15-CR-603 (WJM), 2021 WL 303009, at *3 (D.N.J. Jan. 29, 2021) (citing cases). Rather, "[i]t appears instead that social inequities, like poverty and access to healthcare, affecting racial and ethnic minority groups may be the reason these groups are disproportionately affected by the virus." See id.; see also CDC, Health Equity Considerations and Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last accessed June 9, 2021).

For all of the above reasons, although I recognize the gravity of the Covid-19 pandemic and am sympathetic to Defendant's concerns for his health and safety, I find that these concerns

at this moment in time, even in the aggregate, are too generalized to be considered "extraordinary and compelling" for purposes of compassionate release.

THEREFORE, this 9th day of June, 2021, it is ordered that Defendant's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as Amended by the First Step Act of 2018 [ECF No. 896], is DENIED.

BY THE COURT:

_Donetta F. Ambrose_

Donetta W. Ambrose
United States Senior District Judge